## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

DIONNE YOUNG,

                Plaintiff,                    Case No. 4:12-cv-15187

                                               Judge Gershwin A. Drain

v.                                   Mag. Judge Mark A. Randon

JOHN MCHUGH, et al
Secretary of the Army,

                Defendant.

_____/

| | | |
|---|---|---|
| Ronnie M. Strong P-34545 | Theresa M. Urbanic P-68005 | Vanessa M. Mays |
| Attorney for Plaintiff | Attorney for Defendant | Attorney for Defendant |
| 615 Griswold, Ste 925 | U.S. Attorney's Office | U.S. Attorney's Office |
| Detroit, MI 48226 | 211 W. Fort Street | 211 Fort Street |
| 313-595-8801 | Detroit, MI 48226 | Detroit, MI 48226 |
| LawRonnieStrong@aol.com | 313-226-3271 | 313-226-3271 |

_____/

### *PLAINTIFF RESPONSE TO DEFENDANTS*
### *MOTION FOR SUMMARY JUDGMENT*

      NOW COMES Plaintiff Dionne Young by and through her attorney Ronnie M. Strong and pursuant to Federal Rules of Civil Procedure (Fed.R.Civ.P.) 56 and the Local Rule (LR) 5.1 & 7.1 files the attached response to Defendant's motion for Summary Judgment per Fed.R.Civ.P 56.

                             Submitted By

Dated: May 14, 2014             */s/ Ronnie M. Strong*
                             Ronnie M. Strong P-34545
                             Attorney for Plaintiff
                             615 Griswold, Ste 925
                             Detroit, Michigan 48226
                             313-595-8801

1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

DIONNE YOUNG,

                Plaintiff,                       Case No. 4:12-cv-15187

                                                Judge Gershwin A. Drain

v.                                          Mag. Judge Mark A. Randon

JOHN MCHUGH, et al
Secretary of the Army,

                Defendant.

_____/

| Ronnie M. Strong P-34545 | Theresa M. Urbanic P-68005 | Vanessa M. Mays |
|---|---|---|
| Attorney for Plaintiff | Attorney for Defendant | Attorney for Defendant |
| 243 W. Congress, Ste 350 | U.S. Attorney's Office | U.S. Attorney's Office |
| Detroit, MI 48226 | 211 W. Fort Street | 211 Fort Street |
| 313-595-8801 | Detroit, MI 48226 | Detroit, MI 48226 |
| LawRonnieStrong@aol.com | 313-226-3271 | 313-226-3271 |

_____/

***BRIEF IN SUPPORT OF PLAINTIFF RESPONSE TO***
***DEFENANT'S MOTION FOR SUMMARY JUDGMENT***

# TABLE OF CONTENTS

**Item**                                                                    **Page**

Exhibit List……………………………………………………………..4

Index of Legal Authority…………………………………………………5

Statement of Questions...………………………………………………. 6

Statement of Legal Proceedings…………………………………………...7

Statement of Facts……………………………………………………9

Legal Standard……………………………………………………………15

Legal Argument …………………………………………………………...17-25

Relief Requested…………………………………………………...…26

Certification of Service…………………………………………………27

**EXHIBIT LIST**

| Exhibit | Comment | Exhibit # |
|---|---|---|
| Mrs Young Affidavit | | 1 |
| Formal EEO Complaint | | 2 |
| Mrs Young Email to Diane Walters complaining of EEO violation | | 3 |
| Plaintiff´s Evaluation Report for 2009 | | 4 |
| Plaintiff´s Evaluation Report for 2010 | | 5 |
| Ms Young position description | | 6 |
| Email from G-2 (Army Intelligence) | | 7 |
| Memo from supervisor to Mrs Young | | 8 |
| Letter from Mrs Young Doctor | | 9 |

## INDEX OF LEGAL AUTHORITY

***Fed.R.Civ.P.***

 Rule 56

***Case Law***

Snyder v. Ag Trucking Co., 57 F.3d 484, 488 (6th Cir. 1995). "

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)

Isquith v. Middle S. Utils., 847 F.2d 186, 199 15th Cir.), cert. denied, 488 U.S. 926 (1988)

U.S. v. One 107.9 Acre Parcel of Land, 898 F.2d 396, 399-400 (3d Cir. 1990)

Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128-29 (4th Cir. 1987)

Atchison, T. & S.F. Ry. v. Buell, 480 U.S. 557, 567-71 (1987);

Anderson v. Hodel, 899 F.2d 766, 770-71 19th Cir. 1990)

Veillon v. Exploration Servs" 876 F.2d 1197, 1200 (5th Cir. 1989).

Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544 (6th Cir. 2004)

McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973)

Texas Dept. of Community Affairs v.Burdine, 450 U.S. 248, 253 (1981)

Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078 (6th Cir. 1994)

 Jonesv. Potter, 488 F.2d 397 (6th Cir. 2007)

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)

Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006)

DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004)

Fenton v. HiSAN, Inc., 174 F.3d 827, 829-30 (6th Cir. 1999)

Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993)

KUKA Welding Systems & Robot Corp., 171 F.3d 1073 (6th Cir. 1999)

Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7 (1st Cir. 2002)

Gorski v. N.H. Dep't of Corrections, 290 F.3d 466, 474 (1st Cir. 2002)

Williams v. General Motors Corp., 187 F.3d 533 (6th Cir. 1999)

Davis v. Monsanto Chem. Co., 858 F.2d 345, 349 (6th Cir. 1988)

Holtz v. Rockefeller & Co., Inc., 258 F.3d 62 (2d Cir. 2001),

Schwapp v. Town of Avon, 118 F.3d 106, 112 (2d Cir. 1997)

In Conner v. Schrader-Bridgeport Intern., Inc., 227 F.3d 179 (4th Cir. 2000)

Smith, 202 F.3d at 243 (citing Beardsley v. Webb, 30 F.3d 524, 530 (4th Cir. 1994))

Harvill v. Westward Communications, LLC, 433 F.3d 428 (5th Cir. 2005)

Slayton v. Ohio Dept. of Youth Services, 206 F.3d 669 (6th Cir. 2000)

Oncale v. Sundowner Offshore Services, Inc., 118 S.Ct. 998, 1003 (1998)

In McGinest v. GTE Service Corp., 360 F.3d 1103 (9th Cir. 2004)

Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1166–67 (9th Cir.2003)

Swinton v. Potomac Corporation, 270 F.3d 794, 803 (9th Cir.2001)

Dee v. Colt Construction and Delivery Company, 28 F.3d 1446  (1994)

Lambert v. Genesee Hosp., 10 F.3d 46 (2nd Cir. 1993)

Valerio v. Putnam Assoc., Inc., 173 F.3d 35, 41 (1st Cir. 1999)

Gaines v. Runyon, 107 F.3d 1171 (6th Cir. 1997)

Jasany v. United States Postal Serv., 755 F.2d 1244, 1248 (6th Cir. 1985)

Johnson v. University of Cincinnati, 215 F.3d 561, 579-81 (6th Cir. 2000)

***United States Code***

Title VII, 42 U.S.C. 2000(e)(3)(a).

Title VII. See 42 U.S.C. § 2000e-3(a)

42 U.S.C. § 2000e-3a29 C.F.R.  1630

***C.F.R.***

29 C.F.R.  1630.2(j)

## STATEMENT OF QUESTIONS PRESENTED

**Question 1**:  Whether or not a genuine issue of a material fact exist that
Defendants discriminated against the Plaintiff in violation of
Title VII of the Civil Rights Acts of 1964

     Plaintiff Answers: Yes
     Defendant Answers: No

**Question 2**: Whether or not a genuine issue of a material fact exist that
Defendants created a hostile work environment as to the Plaintiff in
violation of  Title VII of the Civil Rights Acts of 1964

     Plaintiff Answers: Yes
     Defendant Answers: No

**Question 3**: Whether or not a genuine issue of a material fact exist that
Defendants retaliated against the Plaintiff when she engaged in a lawful
Work activity in violation of Title VII of the Civil Rights Acts of 1964

     Plaintiff Answers: Yes
     Defendant Answers: No

**Question 4**: Whether or not a genuine issue of a material fact exist that Defendants
violated the Rehabilitation Act of 1973 against t the Plaintiff  when the
Plaintiff requested a reasonable accommodation

     Plaintiff Answers: Yes
     Defendant Answers: No

**LEGAL PROCEEDINGS**

*November 26, 2012*

     Plaintiff Dionne Young filed a twenty-two count complaint against defendants John McHugh, U.S. Army TACOM, Mary Jo Estep, Joseph Zaccagni, and Thomas DeYoung alleging employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*; 42 U.S.C. § 1981; 42 U.S.C. § 1983 and the Rehabilitation Act of 1973, 29 U.S.C. § 701. Plaintiff claims that during her employment at the U.S. Army TACOM facility in Warren, Michigan, she was subjected to race discrimination (African American), disability discrimination and retaliation. Plaintiff also asserted common law claims of intention and negligent infliction of emotional distress against defendants Estep, Zaccagni and DeYoung.

*On April 22, 2013*

     The Court entered an Order dismissing the claims filed pursuant to 42 U.S.C. §§ 1981 and 1983; and the common law claims of intentional and negligent infliction of emotional distress filed against defendants Estep, Zaccagni and DeYoung. As a result, Counts V through XXII of the complaint were dismissed. Plaintiff remaining claims consist of the following:

       Count I: Discrimination in violation of Title VII of the Civil Rights Acts of 1964
           as to Defendant John McHugh and TACOM

       Count II: Hostile Work Environment in Violation of Title VII of the Civil Rights Act
           of 1964 as to Defendants John McHugh and TACOM

       Count III: Retaliation in Violation of Title VII of the Civil Rights Act of 1964
           as to Defendants John McHugh and TACOM

       Count IV: Violation of the Rehabilitation Act of 1973 as to Defendants John McHugh
           and TACOM

*April 18, 2014*

     Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56, on Counts I through IV, the only remaining claims pending before the Court.

*May 14, 2014*

     Plaintiff filed her response to Defendant motion for Summary Disposition.

## STATEMENT OF FACTS

### *The Parties*

1st: Plaintiff Dionne Young an adult African American female.

2nd: Defendant John McHugh, Secretary of Army, is head of the Department of the Army, an agency of the United States of America.

3rd: U.S. ARMY TACOM (hereinafter "TACOM") a division of the US Army is headquartered in Warren, Michigan.

 4th: Mary Joe Estep  a Caucasian female who was employed by the United States Department of the Army and/or TACOM and was the immediate supervisor and/or team lead for Plaintiff Young.

5th:  Joseph Zaccagni Caucasian male is employed by the United States Department of the Army and/or TACOM and was Plaintiff Young's first line supervisor.

6$^{th:}$  Thomas DeYoung a Caucasian male is employed by the United States Department of the Army and/or TACOM and was Plaintiff Young's second line supervisor.

### *The Facts*

Mrs. Young has served in the United States Army Reserves (hereinafter "US Reserves") for over 19 years and currently holds the rank of Captain. As part of her obligation to the US Reserves, Mrs. Young  is obligated to participate in various deployment and/or training exercises throughout the year. In addition to being a Captain in the US Reserves, Mrs. Young is formally educated and holds a B.S in Political Science and a Certificate in Paralegal Studies.

### *2005*

Mrs. Young began her employment with the Department of Veterans Affairs as a Team Lead for the Fee Basis Department. It should noted at this juncture that while employed at V.A. Mrs. Young service was exemplary.

### *July 2007*

Mrs. Young transferred from V.A. to TACOM in Warren, Michigan, to assume the position of a system Acquisition Specialist. Mrs. Young was than reassigned to the position of secretary, Mrs. Young than received a promotion as a Payroll Technician GS-7. As a payroll technician Mrs. Young duties and/or responsibilities were not limited to, maintaining document filings, customer service, inputting customer dates into the payroll system, inputting new hire data into the payroll system, and responding to payroll related questions from the customers either in person, or via phone or email. It should be noted at this juncture that Mrs. Young had never held a position as payroll technician nor had she any previous

9

knowledge, training or experience in the area of payroll technician. It should also be noted that at the time of her hire into the payroll technician position the racial composition of the payroll department was as follows:

Two Caucasian female/Two Customer Service Representative (CSR)
One African American Male/CSR (David Coleman)
Two Caucasian Males/ Second and Third line supervisors

   When Mrs. Young first arrived at the payroll section her assignment was a developmental assignment which is vernacular for "On the Job Training" this assignment was suppose to be for 120 days but due to Mrs. Young going on maternity leave her developmental assignment lasted for approximately three months. During this three month time period Mrs. Young was only taught to file payroll documents and to complete Combined Federal Contribution (CFC) forms. Combined Federal Contribution are contribution made by employees to charities which are deducted from the employee pay and forwarded directly to the charity:

       Mrs. Young immediate supervisor, Mary Estep was responsible for training Plaintiff on payroll procedures and the tools/applications utilized by the department. It should also be noted that David Coleman provided Mrs. Young training on the above mentioned task. Whenever Mrs. Young asked Mary Estep questions concerning a payroll issue, she would refer the Mrs. Young to David Coleman.

### December 2008 Incident

       In December 2008, Mary Estep left the work area to smoke. When Mary Estep returned to the office from smoking, Mrs. Young commented "I need to become a smoker because smokers get all the breaks." According to the Mrs. Young she was sitting in her chair when Mary Estep stood up from her chair, walked towards Mrs. Young calling her a "bitch" and yelled "You need to shut-up and mind your own business." Mrs. Young responded: "You need to step back 'cause if you hit me it's gonna be on . . . I am not one to mess with, and I'm not sure what you did with other people but you're not gonna do it with me." It should be remembered that Mrs. Young was seven to eight months pregnant at this time.  . Coleman interceded and separated the two of them. Following the December 2008 incident, Mary Estep gave Mrs. Young the "silent treatment" for some time. Months later, Mrs. Young asked Mary Estep to put the incident aside and try to move on since they had to work together.

### 2009

       In 2009 Mrs. Young left work on maternity leave and returned to the payroll Department sometime in October 2009. When Mrs. Young returned to the payroll department the following activity took place

**21 Oct 09**:  Mrs. Young desk was removed from the CSR's payroll work area to a desk outside of the CSR's work area.  Mrs. Young request that her desk be moved back to the CSR's payroll area. Mrs Young request was denied by Joseph Zaccagni, he said "it was stupid."

***28 Oct 09***: Mrs. Young informed  Joseph Zaccagni about attending a class given by Employee Assistance "More Solutions" which emphasize on managing stress, anger, relationships. Mrs. Young was given a hard time about attending, Mrs. Young informed Tom this class can be used both professionally and personally. The class was offered by TACOM as part of staff development.

***29 Oct 09 to 12 Nov 09***: Mrs. Young computer system and phone was removed from her cubicle to the office outside of payroll office. In addition Mrs. Young office phone was not working properly because it was incorrectly set up when Mrs. Young advised Joseph Zaccagni about the issue, Mr. Zaccagni told Mrs. Young to set the system up own her own.

***02 Nov 09***:Thomas Deyoung and Mr.  Zaccagni called Mrs. Young into the office and said that she should not be smiling or laughing because some people think that she is picking on them.

***03 Nov 09:*** Due to the tension in the payroll section a meeting was held with Mr. DeYoung,  Mr. Zaccagni,  Estep, Ms Anick and Mrs Young. At the meeting Mr. DeYoung allowed Mary Estep and Ms Anick to be rude to Mrs Young.  Thomas DeYoung allowed Mary Estep and Ms Anick belittle and yell at her. Mary Estep stated to Thomas DeYoung ***" it is either her or me because she did not want to work with someone like me and they need to make a decision***." Mary Estep was standing over Mrs. Young head while making the above remarks.  Thomas DeYoung singled Mrs. Young out saying things were not looking good for her and he did not want to hear anything she had to say because his mind was already made up. Thomas DeYoung continuously asked Mrs. Young if I wanted to be in the section.

***03 Nov 09:*** After the above meeting Thomas DeYoung emailed Mrs. Young  asking "Would she consider working a developmental assignment in G1 for 120 days considering the dynamics within the office, it may be a practical solution to resolve the issues in the payroll department.

***4 November 2009***: Mrs. Young made initial contact with TACOM EEO Official to complain about her work conditions and racial discrimination.

***04 Nov 09:***  Thomas  DeYoung and Joseph Zaccagni called Mrs. Young into the office requesting to know her  decision on the November 3 2009 email that was sent the night prior. Mrs. Young informed them that she need to know more about the assignment before she would to commit to it. Thomas DeYoung stated that Mary Estep and Ms Arnick would determine Mrs. Young promotion.

***05/06 Nov 09***: In a staff meeting  Joseph Zaccagni stated to Mrs. Young that Mary Estep would train Ms. Arnick on payroll issues and train Mrs. Young last  In addition Mary Estep and Ms Arnick were approved for compensation time but not Mrs. Young.

***19 Nov 09:*** Mrs. Young had a scheduled appointment for 3 months and Thomas DeYoung tried Mrs Young change the date. In addition, Thomas DeYoung would make constant inquiry concerning Mrs. Young military duty training attempting to have Mrs. Young change her military duty schedule. .

***23 Nov 2009:*** Mrs. Young returned to work and noticed her leave time was deleted off the leave report computer system, when Mrs. Young inquired about situation  no one know in the payroll section knew what happened. It should be noted that Mrs. Young was the only person deleted off the system. Mary Estep and Ms Arnick was allowed to by Thomas DeYoung to leave work leave 30 minutes early if we don't take our lunch, Mrs. Young did not take a lunch break and charged annual leave for 30 minutes on this day Mary Estep and Ms Arnick who did not take a lunch break was allowed to leave 30 minutes early without being charged leave time.

*24 Nov 09*: Mary Estep stated to Mrs. Young she had a problem with the email that Mrs. Young sent about assisting customers, Mrs. Young explained that she agreed with Defendant Estep statement and she was in the middle of assisting a walk up customer at the CSR station and Mrs. Young requested Ms Arnick to assist the customer, Ms Arnick start arguing about the situation and Mary Estep started yelling at Mrs Young, Mary Estep state to Mrs. Young "you need to do what you are told, I am tired of this." Mrs Young stated she did not have time for the drama and was not going to start my day off arguing." Mary Estep continue to yell and was facing Mrs Young in her chair and said "ohh I just want to hit her...if I could just hit you" Mary Estep than picked up an object on her desk balling up her left fist appearing like she is about to launch the object towards Mrs Young. Mrs Young stated "if she was going to do it, do it but it would be the last time".

Ms Arnick ran out the office to get Rose Pollard and Thomas Deyoung and when they came into the office Ms Pollard came over to Mrs. Young desk and said let's take a walk. Mrs. Young told Ms Pollard and Thomas DeYoung that she was OK. Mrs. Young explained that Mary Estep was about to her. Mary Estep admitted it and said "because she won't shut up. Joseph Zaccagni appeared in the office at this time and was talking to Mrs. Young in a very disrespectful he asked Mrs. Young "why am I here in the section"... Mrs. Young became upset to the point where she went to the nurses' station.

The nurse at work took Mrs. Young's vitals and it was 161/112 with a pulse rate of 110. Mrs. Young informed the nurse that she was having sharp pains in my chest, dizziness and felt nauseated. Mrs Young was immediately transported to the hospital by Tacom's ambulance and admitted into St. Johns Hospital. Various test were performed and medication was given to Mrs. Young to stop the chest pains and regulate her blood pressure. Mrs. Young was kept overnight at the hospital and released 25 Nov 09 approx 3:15pm. The doctors stated that Mrs. Young symptoms appeared to be stress induced.

*25 Nov 09*: Mrs. Young filed a police report with TACOM law enforcement concerning a threat she received from Mary Estep.

*08 Dec 09*: Mrs Young was removed from payroll section by Thomas Zaccagni and her door key taken away. Mrs Young contacted her Union Representative (Dan Martin) and had a meeting with him on the incidents that have occurred. At approx 11:30am, Mrs. Young was called into the office by Joseph Zaccagni and was read a reprimand dated 8 Dec09. Mrs. Young refused to sign the reprimand and notified the union representative that she had just received a reprimand which was not warranted.

*09 Dec 09*: Mrs Young was not allowed to process payroll given other task to do, Mrs Young asked Joseph Zaccagni if she still part of the team. Joseph Zaccagni refused to answer. Joseph Zaccagni attempted to set Mrs Young up for failure by saying he gave her a certain number of forms to process knowing the full well the number was false.

*16 Dec 09*: Joseph Zaccagni stated to Mrs Young that she would only process CFC forms. Mrs Young was denied training on any other payroll processing issues.

*22 Dec 09*: Mrs Young was called into Thomas DeYoung office; Mary Estep told Thomas DeYoung that she was serious she will leave if Mrs. Young does not leave, Mary Estep stated "I am tired of this Queen Bitch" pointing and referring to Mrs Young getting her way. Thomas DeYoung and Joseph Zaccagni failed to anything to Mary Estep.

*24 Dec 09:* Mrs Young had informed Joseph Zaccagni that she had had 2 hours of compensation time and request for it to be official comp time instead of unofficial so it could be noted on the leave sheet, but

Mrs Young request was denied because Thomas DeYoung said it was too much paperwork involved. Mary Estep and Ms Arnick was allow to have official comp time logged on the leave sheet.

*25 Nov 2009* Ms Arnick and Mary Estep both were credited with 5 hours comp time earned on the log, but 9 hours comp time taken from Mrs. Young on 27 Nov. Each pay period Ms Arnick was allow to accrue comp time but Mrs. Young was denied comp time.

*27 Nov 2009*: Mrs Young compensation time was taken away.

*30/31 Dec 09*:Ms Arnick and Mary Estep  were allowed to work additional 5 hours over on this day plus they left for lunch. but Mrs. Young  was denied 1 hr 45min of additional time worked to complete a time sensitive task . Joseph Zaccagni never informed me her that she would be allowed comp.

*2010*

*5 Jan 10*: Mrs. Young was assigned certain payroll task for which she had not received training for, when Mrs Young requested assistance from Mary Estep, her request was denied. Mrs. Young was told to ask David Coleman for assistance.

*6 Jan 10*: David Coleman agreed to come in early to train Mrs Young because the computer systems were down and they could not retrieve the information. Although Mrs Young came in early she did not request this time as comp time because she wanted to make sure everyone records were pulled. Mr. Coleman showed Mrs Young how to pull the missing timecards because that is a part of completing the report stage to identify who timecards were missing. When the other CSR's came to work at 0555 Mrs Young had already start working the missing time report to assist with processing payroll.Mary Estep begin yelling at Mrs Young saying "you need to do what you are told and mind your own business."  Ms Arnick and Ms Estep notified Joseph Zaccagni that Mrs Young was performing payroll duties at which time Joseph Zaccagni came to Mrs. Young desk yelling that she was not suppose to do the missing time cards only the reports. Mrs. Young explained to Joseph Zaccagni that she could not complete one task without the other because the employees had to be identified to get paid correctly. Joseph Zaccagni stood over Mrs Young and said "Do the report now-while I am watching"...

        Mrs Young informed him that she did not work well with someone standing over her and would appreciate if he did not hover over my head while she was working. Mrs. Young informed Joseph Zaccagni informed him that she am tired of getting abused by the management team as well as the CSR's and it must stop. She further informed him that he allow Mary Estep and Ms Arnick to work as many hours that they want but I am denied which forces me to volunteer my time so employees does not have to suffer. Mrs. Young also informed Joseph Zaccagni that it appears that he takes joy in mistreating he to which Joseph Zaccagni stated "*I can't be happy because I am filing all type of complaints against him*"

*07 Jan 10:* Mrs Young request help from the Employee Assistance director deal with the situation

*11-15 Jan 10:* Mrs. Young was taken off work by her doctor because the stressful/hostile environment at work causing her anxiety, depression and stomach pains. Mrs. Young was than prescribed medication for her symptoms. Because of the work related stress Mrs. Young was forced to stop nursing her 9 month old child in addition Mrs. Young hair was falling out.

*25 January 2010:* Mrs. Young filed a formal complaint TACOM and aall Defendant concerning her treatment in the work place.

13

*04 Feb 2010*: Joseph Zaccagni attempted to coerce a customer to make a false statement in regards to poor customer service provided by Mrs. Young.

## LEGAL STANDARD

### 1. *Summary Judgment*

Fed.R.Civ.P, Rule 56 provides:

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(c) PROCEDURES.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Summary Judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact and an absence of evidence in support of the nonmoving party's case. *Snyder v. Ag Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). "

The principal issues that arise under Rule 56(c) are whether a *factual* dispute exists, whether the dispute is *material* to the outcome of the case, and whether the dispute is *genuine.* A fact issue is material if it must be decided in order to resolve the substantive claim or defense to which the motion is directed. As the Supreme Court explained in *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986) "Only disputes over facts that might affect the outcome of the suit" preclude summary judgment. The opinion in *Anderson* further observes that "the materiality determination rests on the substantive law, and it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.

*General Requirements*

Once the movant makes a properly supported motion, the burden shifts to the nonmovant to demonstrate the existence of a genuine dispute, Under Rule 56e), "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits

or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial" The non-movant may set forth specific facts by submitting affidavits or relevant excerpts from depositions, answers to interrogatories, or admissions showing a genuine issue for trial. When appropriate, it may simply demonstrate to the court that the record on the motion contains sufficient specific facts to establish the existence of a genuine issue. Isquith v. Middle S. Utils., 847 F.2d 186, 199 15th Cir.), *cert. denied,* 488 U.S. 926 (1988).

Because credibility is not an issue on summary judgment, ***the nonmovant's evidence must be accepted as true for purposes of the motion.*** The court cannot discount a nonmovant's affidavit for lack of credibility, and ***it must draw all reasonable inferences and resolve all genuine factual disputes in favor of the nonmovant.*** There are limits; however, to a party's ability to raise a dispute by submitting testimony contradicted by that party's other evidence *U.S.* v. One 107.9 Acre Parcel of Land, 898 F.2d 396, 399-400 (3d Cir. 1990); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128-29 (4th Cir. 1987)

Finally in the case of *Anderson v. Liberty Lobby,* 477 U.S. 242, 255 11986) the stated the Court recognized that there may be cases where there is no manifest material factual dispute but the trial judge nevertheless "believes that the better course would be to proceed to a full trial, presumably because in the circumstances of the case a fuller record might afford a more substantial basis for decision. Atchison, T. & S.F. Ry. v. Buell, 480 U.S. 557, 567-71 (1987); Anderson v. Hodel, 899 F.2d 766, 770-71 19th Cir. 1990); Veillon v. Exploration Servs" 876 F.2d 1197, 1200 (5th Cir. 1989).

# LEGAL ARGUMENT

**Whether or not a genuine issue of a material fact exist that
Defendants discriminated against the Plaintiff in violation of
Title VII of the Civil Rights Acts of 1964**

Plaintiff Answers: Yes
Defendant Answers: No

## *Applicable Legal Standards as to Discrimination in violation of Title VII of the Civil Rights Acts of 1964*

A plaintiff may establish discrimination by direct or circumstantial evidence. *Rowan v. Lockheed Martin Energy Systems, Inc.,* 360 F.3d 544 (6th Cir. 2004). In the absence of direct evidence, federal courts apply the three-step legal analysis set forth in *McDonnell Douglas Corp. v Green,* 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case. If the plaintiff presents sufficient evidence to successfully establish a *prima facie* case, the employer need only to articulate a legitimate, nondiscriminatory reason for its action. *Texas Dept. of Community Affairs v.Burdine*, 450 U.S. 248, 253 (1981). Once the employer meets its burden of production, the plaintiff must prove by a preponderance of the evidence that the employer's reasons are not its true reasons, but a pretext for intentional discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078 (6th Cir. 1994). This legal standard is used by federal courts to assess Title VII and Rehabilitation Act discrimination claims based on circumstantial evidence. *Jonesv. Potter*, 488 F.2d 397 (6th Cir. 2007).

In addition in the case of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) The Supreme Court examined the issue of mixed motives — legitimate and discriminatory motives — in disparate treatment cases and held that Title VII discrimination must have played a motivating part in the employment decision to hold employers liable, but it does not have to be the only motivation.

To establish a *prima facie* case of race discrimination the plaintiff must show that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707 (6th Cir. 2006) *quoting*, *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

## *Application of Law to the Facts at Bar*

Defendant argues the following:  Plaintiff cannot establish the second and fourth elements of her *prima facie* case as to the claims in Count I of the complaint. The evidence fails to establish that Plaintiff

suffered an adverse employment action The verbal reprimands and disparaging comments referenced in Count I are not actionable

Defendants' assertion is without merit based on the following grounds:

First elements number one and three will not be discussed in that the Defendants have agreed in it summary judgment motion that Plaintiff has established prima facie facts to those elements.

Element 2: The Defendant did in fact suffer an adverse employment action in the following manner:

a. Plaintiff was denied training opportunities that was afforded to Ms Arnick and Mrs Estep

b. That in moving her seat, Plaintiff's new seat placed her in an area located on the opposite side of the locked door where the rest of her payroll team was seated.

c. Defendants' isolation and the locking out of Plaintiff interfered with Plaintiff's access to data, files and the tools needed to perform her job.

d. Defendants further hindered, harassed and frustrated Plaintiff's ability to perform her job by causing her to be denied access to common software tools and then labeling Plaintiff as incompetent; while causing her to falsely believe that her inability to access these applications was her fault.

e. Upon investigation, it became known to Plaintiff that Defendants, jointly and/or individually, caused negative flags or "clearance inquiries" to be lodged against Plaintiff's security clearance.

f. As a result of the "clearance inquiries", Plaintiff's access to certain software applications necessary to perform her job duties was either hindered or denied.

g. Plaintiff received adverse evaluation reports that she would not have otherwise received but for the Defendant actions in setting the Plaintiff up for failure.

Element 4: The Plaintiff was treated differently than similarly-situated, non-protected employees. Mary Estep and Ms Arnick are CSR's within the payroll department and both non protected employee did not undergo the above adverse employment action which Plaintiff had to endure. Defendants do not deny in their motion for summary judgment that none of the above actions occurred, rather the Defendant suggest the above adverse actions were *de minimis* in nature or the actions were due to a personality conflict. The Plaintiff submits that it would be best left to the trier of fact to determine if Defendant's action was *de minimis* or due to a personality conflict.

For the purposes of this motion Mrs. Young's evidence must be accepted as true and without passing on the issues of credibility, and drawing all reasonable inferences and resolve all genuine factual disputes in favor of Mrs, Young Defendant motion for summary judgment as to Count I should be denied.

**Whether or not a genuine issue of a material fact exist that
Defendants created a hostile work environment as to the Plaintiff in
violation of  Title VII of the Civil Rights Acts of 1964**

Plaintiff Answers: Yes
Defendant Answers: No

***Hostile Work Environment in Violation of Title VII of the Civil Rights Act***

Title VII states the following: It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

In order to establish a claim of hostile work environment based on race, a plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her race; (4) the harassment unreasonably interfered with the plaintiffs work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the racial harassment and failed unreasonably to take prompt and appropriate corrective action. *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir. 1999).

A hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victims employment and create an abusive working environment. *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993). In *Burlington Northern,* the Supreme Court was careful to distinguish material adversity from "trivial harms." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). After all, Title VII "does not set forth a general civility code for the American workplace" and an employee is not immunized  "from those petty slights or minor annoyances that often take place at work and that all employees experience."  Example of hostile work environment genetic markers are: abuse by co-workers Pay cut; requesting an employee to quit; down grade in employment position or work activity, physical harm and isolation.

Harassment need not be so extreme that it produces tangible effects on job performance or psychological well-being to be actionable. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993). However, in Moore v. KUKA Welding Systems & Robot Corp., 171 F.3d 1073 (6th Cir. 1999), the court explained: In Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), the Supreme Court held that a compensable injury in a hostile work environment claim need not rise to the level of affecting the psychological well-being of the victim, but there must be proof of some mental distress. Id. at 22.

In Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7 (1st Cir. 2002), the court explained:

There is no "mathematically precise test" for determining when conduct in the workplace moves beyond the "merely offensive" and enters the realm of unlawful discrimination. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Rather, the question whether the environment is objectively "hostile or abusive" must be answered by reference to "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. "Subject to some policing at the outer bounds," it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment.  Gorski v. N.H. Dep't of Corrections, 290 F.3d 466, 474 (1st Cir. 2002).

     In Williams v. General Motors Corp., 187 F.3d 533 (6th Cir. 1999), the court explained: the district court erred when it concluded that Williams had not met the subjective test because "she cannot establish that the harassment affected her work." Instead of requiring a plaintiff to establish that her work was actually affected by the harassment, "the adjudicator's inquiry should center, dominantly, on whether the discriminatory conduct has unreasonably interfered with the plaintiff's work performance." Harris, 510 U.S. at 25 (Ginsburg, J. concurring). To show such interference, "***the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment****. The employee need only show that the harassment made it more difficult to do the job.*" Davis v. Monsanto Chem. Co., 858 F.2d 345, 349 (6th Cir. 1988) (emphasis added by Williams panel).

     In Holtz v. Rockefeller & Co., Inc., 258 F.3d 62 (2d Cir. 2001), the court explained: "[t]he question of whether a work environment is sufficiently hostile to violate Title VII is one of fact. See, e.g., Schwapp v. Town of Avon, 118 F.3d 106, 112 (2d Cir. 1997).  In Conner v. Schrader-Bridgeport Intern., Inc., 227 F.3d 179 (4th Cir. 2000), the court explained "whether the harassment was sufficiently severe or pervasive to create a hostile work environment is "quintessentially a question of fact" for the jury, Smith, 202 F.3d at 243 (citing Beardsley v. Webb, 30 F.3d 524, 530 (4th Cir. 1994)), as is the issue of the plaintiff's credibility.

     In Harvill v. Westward Communications, LLC, 433 F.3d 428 (5th Cir. 2005), the court explained: In requiring Harvill to establish that the conduct was both severe *and* pervasive, the district court applied the wrong legal standard. As quoted above, the Supreme Court has stated that Title VII provides a legal remedy to victims who establish that the abusive conduct was severe *or* pervasive. Meritor 477 U.S. at 67; see also Harris, 510 U.S. at 21; Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001); Faragher v. Boca Raton, 524 U.S. 775, 786 (1998) (quoting Meritor, 477 U.S. at 67); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752 (1998); Hostetler v. Quality Dining, Inc., 218 F.3d 798, 808 (7th Cir. 2000) *("Harassment need not be severe and pervasive to impose liability; one or the other will do.").*

     In Slayton v. Ohio Dept. of Youth Services, 206 F.3d 669 (6th Cir. 2000), the court explained:

To establish an objectively hostile environment, one must establish that a "reasonable person in the plaintiff's position, considering all the circumstances" would find the environment hostile. Oncale v. Sundowner Offshore Services, Inc., 118 S.Ct. 998, 1003 (1998); In McGinest v. GTE Service Corp., 360 F.3d 1103 (9th Cir. 2004), a Title VII racial harassment action, the court explained: In Ellison, in the context of sexual harassment, we evaluated objective hostility from the perspective of a reasonable woman . . . We now state explicitly what was clear from our holding in Ellison, that allegations of a racially hostile workplace must be assessed from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff.

*Ellerth/Faragher, supra* clarified the standards governing an employer's liability for harassment. Essentially, when an employee suffers a tangible employment action resulting from a direct supervisor's harassment, the employer's liability is established by proof of the harassment and a resulting tangible employment action. *See Faragher*, 524 U.S. at 807–08. No affirmative defense is available to the employer in those cases. In cases where no tangible employment action has been taken, the employer may interpose an affirmative defense to defeat liability by proving (a) that the employer exercised reasonable care to prevent and correct promptly any discriminatory conduct, and (b) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. *Ellerth*, 524 U.S. at 764–65; *see also Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1166–67 (9th Cir.2003); *Swinton v. Potomac Corporation*, 270 F.3d 794, 803 (9th Cir.2001).

**Application of Law to the Facts at Bar**

Defendant argues that Count II of Plaintiff complaint should be dismissed because Plaintiff alleges that she was harassed because Defendants did not allow her to sit in her preferred seat, asked her to move computer equipment to another desk, asked question of her prior to approving leave. (Taken as a whole, the incidents Plaintiff complains of are more akin to these "trivial harms" that do not rise to the level of severe or pervasive conduct sufficient to establish a claim of actionable harassment. In addition the Defendants assert Plaintiff has made no showing that conduct complained of was caused by race discrimination and even if Defendant concedes the truth of all the incidents Plaintiff describes for the purpose of this motion only, there is still no evidence to suggest racial based harassment. Rather, the circumstances described appear to be ordinary workplace friction.

Defendants' observations and conclusions or wrong, dead wrong based on the following: Plaintiff has set forth numerous instances which Plaintiff endured at the work. From the incident in 2008 when Mary Estep threatened Plaintiff and from the time Plaintiff returned back to the work from maternity leave in 2009 every day to every other day plaintiff was subject to some form or type of harassment by her co-workers and supervisors. When Plaintiff complained of the harassment to

her supervisors nothing was done, in fact the harassment intensified in its nature and scope. Plaintiff contends there is nothing trivial about a supervisor removing your desk from your co-workers; denial of compensation time; being belittle by the boss in front of your peers, the boss allowing co-workers to belittle you in front of other co-workers; have adverse flags being filed in your military Department of Defense Personnel File; Having your files and records deleted from the system; being threaten by a co-worker to the point where you are transported to the hospital by EMS. All of these things the Plaintiff endured and more.

The harassment suffered by the Plaintiff was sufficiently severe or pervasive to create a hostile work environment and this is "*quintessentially a question of fact" for the jury*, Smith, 202 F.3d at 243 citing Beardsley v. Webb, 30 F.3d 524, 530 (4th Cir. 1994)), as is the issue of the plaintiff's credibility.

Once again Mary Estep and Ms Arnick are CSR's within the payroll department and both non protected employee did not undergo the above harassment which Plaintiff had to endure. Defendants do not deny in their motion for summary judgment that none of the above actions occurred, rather the Defendant suggest the above actions were trivia. Mrs. Young's evidence must be accepted as true and without passing on the issues of credibility, and drawing all reasonable inferences and resolve all genuine factual disputes in favor of Mrs. Young, Defendant motion for summary judgment as to Count II should be denied.

### *Whether or not a genuine issue of a material fact exist that Defendants retaliated against the Plaintiff when she engaged in a lawful Work activity in violation of Title VII of the Civil Rights Acts of 1964*

Plaintiff Answers: Yes
Defendant Answers: No

### *Retaliation in Violation of Title VII of the Civil Rights Act of 1964*

Title VII prohibits discrimination against a current employee, former employee, or applicant because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, 42 U.S.C. 2000(e)(3)(a). Title VII also prohibits discrimination against a current or former employee or applicant because he has opposed any practice made in unlawful practice by Title VII, 42 U.S.C. 2000e-3(a) the courts have held that an employee is protected if he or she had a reasonable and good faith belief that the practice they opposed constituted a Title VII violation even if it turned out that the practice they opposed was not a violation of Title VII, *Dee v. Colt Construction and Delivery Company*, 28 F.3d 1446 (1994).

22

Title VII states employees have a right to be free from retaliation for their opposition to discrimination or their participation in an EEOC proceeding by filing a charge, testifying, assisting, or otherwise participating in any manner in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a). *See Johnson v. University of Cincinnati,* 215 F.3d 561, 579-81 (6th Cir. 2000) (affirmative action official who alleged discrimination not based on his status as an African American, but based on his advocacy for increased employment opportunities for minorities and women, could bring a claim under §704(a) of Title VII for retaliation). There are four essential elements of a retaliation claim:

First: The employee  engaged in a protected activity; opposition to discrimination or participation in the statutory complaint process;  Generally, to state an opposition claims, a plaintiff is not required to show that he or she filed a formal complaint with a government agency; rather internal complaints to an employer will suffice. Under the Fair Labor Standards Act, the Second Circuit is in the minority in requiring a formal complaint to have been filed before an opposition retaliation claim is filed. *See Lambert v. Genesee Hosp.,* 10 F.3d 46 (2nd Cir. 1993); *Valerio v. Putnam Assoc., Inc.,* 173 F.3d 35, 41 (1st Cir. 1999).  The courts have found the following to be protected activity: Threatening to file a charge or any other formal complaint alleging discrimination; Complaining to anyone about alleged discrimination against oneself or others; Refusing to obey an order because of an articulated reasonable belief that it is discriminatory; and Requesting reasonable accommodation for disability or religious belief.

Second: The employer knew of the activity.

Third: The claimant was subject to adverse action – any adverse treatment (beyond a petty slight or a trivial annoyance) that is based on a retaliatory motive and is reasonably likely to deter protected activity. There are many types of adverse actions that have been the basis of a successful retaliation claim. Examples include denial of promotion, refusal to hire, denial of job benefits, demotion, suspension, transfer to a more difficult position, threats, reprimands, negative evaluations, and severe and pervasive harassment. Under EEOC Guidance, any "adverse treatment that is reasonably likely to deter protected activity" warrants protection by statute. Similarly, the United States Supreme Court recently held Title VII retaliation claims encompass employer actions which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Adverse actions may occur after the employment relationship has ended, such as adverse job references and informing prospective employers of the protected activity.

Fourth: Causal connection – between the protected activity and the adverse action. *See* 42 U.S.C. § 2000e-3(a). *See Johnson v. University of Cincinnati,* 215 F.3d 561, 579-81 (6th Cir. 2000) (affirmative action official who alleged discrimination not based on his status as an African American, but based on his advocacy for increased employment opportunities for minorities and women, could bring a claim under §704(a) of Title VII for retaliation).  Proof that the adverse employment action was a result of

engagement in protected activity can be direct or circumstantial. The circumstantial evidence demonstrating that the protected activity and the adverse action were linked frequently includes a showing that the adverse action occurred shortly after the protected activity, and the person who undertook the adverse action was aware of the claimant's protected activity. Often, the employer must establish that it would have taken the challenged action notwithstanding the protected activity.

*Application of Law to the Facts at Bar*

Defendant argues three points as to why  Count III of Plaintiff complaint should be dismissed. The Defendant asserts  based on the following groundsPlaintiff can establish the first three elements of a *prima facie* case of retaliation. However, she cannot demonstrate a causal connection between her protected activity in November 2009 and the unsuccessful performance evaluation that she received on February 11, 2011. Several months separate these two events. The evidence shows that at least one year passed between the date of Plaintiff's EEO activity and the date that she was given an unsuccessful rating. This time period is too long to establish an inference of retaliation.

In addition the Defendant's  asserts the Defendant has articulated legitimate, non-discriminatory reasons. Even if Plaintiff can establish a prima facie claim of retaliation, Defendant has articulated legitimate, non-discriminatory reasons for her unsuccessful performance evaluation. The evidence shows that Plaintiff received an evaluation of "Fails" on the elements of technical competence; working relationships & communications; and adaptability and initiative and a "Needs Improvement" on Responsibility and Dependability. Plaintiff failed to complete her tasks in a timely fashion. She was unable to answer customer questions or complete payroll tasks.  Plaintiff can not show but for her protected activity she would not have received an unsuccessful on her performance evaluation in 2011. In order to prevail on her retaliation claim, Plaintiff must prove that her protected activity was the but-for causation of the challenged employment action. This she cannot do. The evidence shows that Plaintiff's job performance was steadily declining over the years.

Once again Defendant's observation misses the mark and is wrong. On November 4, 2009 Plaintiff made her first contact with the EEO office at TACOM and made initial contact with TACOM EEO Official to complain about her work conditions and racial discrimination. It was shortly after that contact that the harassment endured by the Plaintiff intensified in its nature and scope. The retaliation against the Plaintiff was not limited to a simple adverse evaluation report; it was all of the other actions taken against the Plaintiff as outlined above. Defendant contends that Plaintiff cannot show causation relative to her EEO complaint and the retaliation she endured.  It should be remembered what Mr. Joseph Zaccagni stated to the Plaintiff when she asked him "that it appears that he takes joy in mistreating her,

24

Mr Joseph Zaccagni stated "***I can't be happy because I am filing all type of complaints against him***"
This statement alone if it is to be believed would be a sufficient basis to establish causation. Defendant
would have the court believe that there was no causation between Plaintiff November 4, 2009 EEO
contact and the actions suffered by the Plaintiff after November 4, 2014.

Mrs. Young's evidence must be accepted as true and without passing on the issues of credibility,
and drawing  all reasonable inferences and resolve all genuine factual disputes in favor of Mrs. Young,
Defendant motion for summary judgment as to Count III should be denied.

***Whether or not a genuine issue of a material fact exist that Defendants
violated the Rehabilitation Act of 1973 against t the Plaintiff  when the
Plaintiff requested a reasonable accommodation***

Plaintiff Answers: Yes
Defendant Answers: No

***The Rehabilitation Act of 1973***

In order to prevail on an allegation of disability discrimination based on a failure to
accommodate, the Plaintiff must first establish a prima facie case by showing that: (1) she is a disabled
person as defined by the Rehabilitation Act; (2) she is qualified to perform the essential functions of the
job in question; (3) theArmy was aware of her disability; (4) an accommodation was needed; and (5) the
Army failed to provide the necessary and reasonable accommodation. *Gaines v. Runyon*, 107 F.3d 1171
(6th Cir. 1997). The Plaintiff has failed to establish the five factors required to prove a *prima facie* case of
disability discrimination under this theory.

The Plaintiff has failed to prove that she is in fact disabled within the meaning of the
Rehabilitation Act.6 This is a threshold requirement which the Plaintiff must satisfy in order to assert a
disability discrimination claim against the defendant. *Jasany v. United States Postal Serv*., 755 F.2d 1244,
1248 (6th Cir. 1985). AMany impairments do not impact an individuals life to the degree that they
constitute disabling impairments.@ 29 C.F.R. ' 1630.2(j). An impairment only becomes a disability if it
substantially limits one or more major life activities. *Id*. AThe determination of whether an individual has
a disability is not necessarily based on the name or diagnosis of the impairment the pe rson has, but rather
on the effect of that impairment on the life of the individual.@ 29 C.F.R. ' 1630.2(j).  Here, Plaintiffs
impairment (stress/gastric problems) do not rise to the level of a disability because it does not
substantially restrict a major life activity.

As to Count IV in plaintiff complaint the Plaintiff would simply object to this count be dismissed.

**RELEIF REQUESTED**

Mrs. Young's evidence must be accepted as true and without passing on the issues of credibility, and drawing  all reasonable inferences and resolve all genuine factual disputes in favor of Mrs. Young, Defendant motion for summary judgment as to Count I thru IV should be denied.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

DIONNE YOUNG,

     Plaintiff,         Case No. 12-15187
                 Judge Gershwin A. Drain
v.                 Mag. Judge Mark A. Randon

JOHN MCHUGH, et al
Secretary of the Army,

       Defendant.
_____/

| | | |
|---|---|---|
| Ronnie M. Strong P-34545 | Theresa M. Urbanic P-68005 | Vanessa M. Mays |
| Attorney for Plaintiff | Attorney for Defendant | Attorney for Defendant |
| 615 Griswold, Ste 925 | U.S. Attorney's Office | U.S. Attorney's Office |
| Detroit, MI 48226 | 211 W. Fort Street | 211 Fort Street |
| 313-595-8801 | Detroit, MI 48226 | Detroit, MI 48226 |
| | 313-226-3271 | 313-226-3271 |

_____/


**CERTIFICATE OF SERVICE**

   I hereby certify that on May 15, 2014, I electronically filed the foregoing paper (Defendant

Response to Motin for Summary Judgment) with the Clerk of the Court using the ECF system which will

send notification of such filing to the following: Vanessa Miree Mays, Esquire. I hereby certify that I

have  E-mail the document to the following non ECF participants: Dionne Young.


           Respectfully submitted,


           *s/Ronnie Strong*
           RONNIE STRONG (P34545)
           Attorney for Plaintiff
           615 Griswold, Ste 925
           Detroit, Michigan 48226
           lawronniestrong@aol.com
           (313) 595-3801
           (313) 961-4631 (fax)

May 15, 2014