UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIONNE YOUNG,

    Plaintiff,

Case No. 12-15187
HON. GERSHWIN A. DRAIN

v.

JOHN MCHUGH, SECRETARY, UNITED
STATES DEPARTMENT OF THE ARMY,
*et. al.*,

    Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#43]

**I.    INTRODUCTION**

On November 26, 2012, Plaintiff, Dionne Young ("Young"), filed the instant Complaint against Defendants, John M. McHugh, US Army TACOM ("TACOM"), Mary Jo Estep ("Estep"), Joseph Zaccagni ("Zaccagni"), and Thomas DeYoung ("DeYoung"). Presently before the Court is Defendants' Motion for Summary Judgment [#43], filed on April 24, 2014. Young filed a Response [#45], on May 15, 2014. Defendants' filed a Reply on May 29, 2014. Oral arguments were heard before the Court on June 2, 2014.

Based on the facts below, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

Young, an African American woman, has served in the United States Army Reserves ("US Reserves") for over 19 years, where she rose to the rank of Captain. In 2005 Young began her employment with the Department of Veterans Affairs ("V.A.") as a Team Lead for the Fee Basis Department. In 2007, Young transferred from the V.A. to U.S. Army TACOM ("TACOM") to take the position of a System Acquisition Specialist. Young was later reassigned to the position of secretary, and then received a promotion to Payroll Technician GS-7 ("payroll technician"). Young had no previous experience as a payroll technician. At the time of Young's hiring, the racial composition of the payroll department was two Caucasian female Customer Service Representatives ("CSR"), two Caucasian males as second and third line supervisors, and one African American male CSR, David Coleman ("Coleman"). Young alleges that during her employment at TACOM she was subjected to: (1) race discrimination, (2) disability discrimination, (3) retaliation, and (4) instances of intentional and negligent infliction of emotional distress.

Young's position in the payroll department was a "developmental assignment," meaning 120 days of on the job training. However, Young's training only lasted 3 months before she went on maternity leave. Young's immediate supervisor, Estep, was responsible for training Young on payroll procedures and the tools and applications utilized by the department. Coleman also occasionally trained Young. Young maintains that whenever she asked Estep questions concerning a payroll issue, Estep would refer her to Coleman.

In December 2008, Estep and Young had an altercation. When Estep returned to the office after a smoke break Young commented, "I need to become a smoker because smokers get all the breaks." Estep stood up from her chair and walked over to Young,

calling her a "bitch" and yelled, "[y]ou need to shut-up and mind your own business." Young responded: "You need to step back 'cause if you hit me it's gonna be on...I am not one to mess with, and I'm not sure what you did with other people but you're not gonna do it with me." Coleman interceded and separated the two women. Young was seven to eight months pregnant at the time. Following the confrontation, Estep gave Young the "silent treatment" for several months - until Young asked Estep to put the incident aside and try to move on since they had to work together.

Young returned from her maternity leave in July 2009 and was promoted to pay technician. As a pay technician, Young's responsibilities included maintaining and reviewing documents, handling customer service calls, imputing data into the payroll system, and responding to related questions from customers. On July 10, 2009, Young met with Zaccagni to discuss her performance. Young was given a document that identified the elements of her performance standards and the specific tasks that she was expected to complete on a daily basis.

When she returned from her maternity leave, Young's desk was moved outside of the CSRs' payroll area. When Young requested that her desk be moved back to the CSRs' work area Zaccagni said no and that her request "was stupid." When Young complained the following week that her office phone, which had also been moved to the outside office, was not working properly because it was incorrectly set up, Zaccagni told her to set the system up on her own. On October 28, 2009, Young spoke to Zaccagni about attending "More Solutions," a class given by Employee Assistance that emphasized managing stress, anger, and relationships. Young alleges that Zaccagni gave her a hard time about attending the class even though it was offered by TACOM as part of staff development and

potentially had both personal and professional benefits.

On November 2, 2009, DeYoung and Zaccagni called Young into the office and told her that she should refrain from smiling or laughing because some people interpreted her actions as Young "picking on them." The following day, due to tension in the payroll section, a meeting was held with DeYoung, Zaccagni, Estep, Anick, and Young. At the meeting DeYoung permitted Estep and Anick to make rude comments towards her, including belittling and yelling at her. At one point in the meeting, Estep stood over Young and said to DeYoung, "it is either her or me." DeYoung singled Young out saying things were not looking good for her and he did not want to hear anything she had to say because his mind was already made up. DeYoung continuously asked Young if she wanted to remain in the payroll section. After the meeting, DeYoung emailed Young asking if she would consider working a development assignment in G1 for 120 days considering the dynamics within the office and suggesting that it might be a practical solution to resolve the issues in the payroll department.

On November 4, 2009, Young contacted a TACOM EEO Official to complain about her work conditions and racial discrimination. Later that day DeYoung and Zaccagni sought out Young and requested her decision about working a development assignment in G1. Young informed them that she needed to know more about the assignment before she would commit to it. DeYoung subsequently stated that Estep and Anick would determine Young's promotion. In the weeks that followed Young was told Estep would be training her on payroll issues, however Anick would be trained first, Estep and Anick were approved for compensation time but Young was not, DeYoung tried to get Young to reschedule a long standing appointment and change her military duty schedule, Young's leave time was

4

deleted off the system, and Estep and Anick were allowed to leave early without being charged leave time while Young was not.

On November 24, 2009, Estep approached Young about a problem she had with an email Young had sent. Young explained that she agreed with Estep, but was in the middle of assisting a walk up customer and requested Anick step in to assist the customer. Anick became upset and Estep yelled at Young, "you need to do what you are told, I am tired of this." Young replied that she did not have time for drama and wasn't going to start the day off arguing. Estep continued to yell at Young "oh I just want to hit you...if I could just hit you." Estep then picked up an object on her desk and balled up her fist as if to throw the object at Young. Anick ran out of the office to get DeYoung. Young became so upset that she had to visit the nurses' station and was transported to the hospital because she began having sharp pains in her chest, dizziness, and felt nauseated. Young was kept overnight at the hospital and told that her symptoms appeared to be stress induced. The next day Young filed a police report with TACOM law enforcement concerning the threat she received from Estep.

On December 8, 2009, Zaccagni removed Young from the payroll department and took away her door key. Young contacted her Union Representative and met with him to discuss the incidents that had occurred. Young was called into Zaccagni's office and read a reprimand which she refused to sign. The following day Young was not allowed to process payroll or given other tasks to do. When she asked Zaccagni if she was still part of the team he refused to answer. The following week Zaccagni told Young she would only process CFC forms and Young was subsequently denied training on any other payroll processing issues.

On December 22, 2009, Young was called into DeYoung's office where she was confronted by Estep who told DeYoung that she was serious about leaving if Young did not leave. Estep stated "I am tired of this Queen Bitch," pointing and referring to Young getting her way. December concluded with Young being denied official compensation that was allowed to Anick and Estep.

On January 5, 2010, Young was assigned a certain payroll task for which she had not been trained to do. When Young requested assistance from Estep she was directed to ask Coleman for help. The following day Coleman and Young came into the office early to train on the computer system. When the other CSRs came into work Estep and Anick were upset that Young was performing payroll duties. Zaccagni told Young that she was only to work on certain reports, not missing time cards. When Young attempted to explain to Zaccagni that she could not complete one task without the other Zaccagni demanded she "do the report now-while I am watching." Young told Zaccagni she was tired of being abused by the management team and the CSRs and commented that it appeared as though Zaccagni took joy in mistreating her. Zaccagni replied that he "couldn't be happy" because Young was filing all types of complaints against him. Young requested help from the Employee Assistance director to deal with the situation.

The following week Young was taken off work by her doctor because the stressful/hostile environment at work was causing her anxiety, depression, and stomach pains. Young was prescribed medication for her symptoms. Because of her work related stress Young was forced to stop nursing her baby and was losing hair. On January 25, 2010, Young filed a formal complaint against TACOM and all Defendants concerning her treatment in the work place.

On February 11, 2010, Zaccagni conducted a performance evaluation on Young. Young received an overall rating of "fair," although it was noted that she needed to improve on adaptability and initiative.

On October 5, 2010, Young applied for a Reasonable Accommodation of Disability, requesting a transfer because of increased, continuous, declining health due to her work environment. A supporting medical letter dated August 17, 2010, from Dr. Gail E. MacIntyre was included with the request and stated Young's need for accommodation and recommending a leave of absence until she could be reassigned to a more conducive work environment. DeYoung requested further medical documentation to support Young's need for reassignment. Dr. MacIntyre submitted an additional letter reiterating that Young suffered form gastroestophageal reflux, migraine cephalgia, and pre-existing hypertension. DeYoung proposed a reduced work schedule to 6-hour days.

On February 2, 2011, Young received a performance evaluation for January 1, 2010 through December 31, 2010, on which she received an overall rating of "unsuccessful." On February 13, 2011, Young accepted a 1-year temporary position with the US Department of Army Reserve Unit in Southfield, Michigan.

### III. LEGAL ARGUMENT

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) permits a party to:

> [M]ove for summary judgment, identifying each clam or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has affirmed the use of summary judgment and recognized it as an

integral part of the fair and efficient administration of justice. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party seeking summary judgment "bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). The evidence presented must be such on which a jury could reasonably find for the plaintiff; mere denials, unsupported allegations, or speculations will not be enough to meet this burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Intentional Race Discrimination Claim

A plaintiff may establish discrimination by direct or circumstantial evidence. *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544 (6th Cir. 2004). In the absence of direct evidence, federal courts apply the three-step legal analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case. If the plaintiff presents sufficient evidence to successfully establish a *prima facie* case, the employer need only to articulate a legitimate, nondiscriminatory reason for its action. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To establish a *prima facie* case of race discrimination the plaintiff must show that: "(1) he or she was a member of a protected class; (2) he or she

suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly situated non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 797 (6th Cir. 2006) (citing *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

Once the employer meets its burden of production, the plaintiff must prove by a preponderance of evidence that the employer's reasons are not its true reasons, but a pretext for intentional discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994). This legal standard is used by federal courts to assess Title VII and Rehabilitation Act discrimination claims that are based on circumstantial evidence. *Jones v. Potter*, 488 F.3d 397, 409 (6th Cir. 2007).

In the instant case, Defendants argue Young cannot establish the second and fourth elements of her *prima facie* case as to the claims under Count I of intentional racial discrimination in violation of Title VII. However, as to the second element, Young has presented specific facts showing she suffered an adverse employment action as: (1) she was denied training opportunities that were offered to Anick and Estep; (2) her seat was moved to an isolated area that was separated from the rest of the payroll team by a locked door (which interfered with her access to data, files, and the tools needed to perform her job); (3) she was denied access to common software tools and then labeled incompetent; (4) Defendants caused negative flags or "clearance inquires" to be lodged against Young's security clearance; (5) as a result of the clearance inquires, Young was denied access to certain software applications, hindering her ability to perform her job; and (6) she received adverse evaluation reports that she would not have otherwise received but for the

Defendants actions in setting her up for failure.

As to the fourth element, Young maintains she was treated differently than similarly-situated, non-protected employees. Estep and Anick are CSRs within the payroll department and neither underwent the adverse employment action Young had to endure. Defendants do not deny in their Motion that none of the above actions occurred, rather they suggest the actions were *de minimis* in nature or were due to a personality conflict. Young argues that it would be best left to the trier of fact to determine if Defendants' actions were *de minimis*[1] or due to a personality conflict.

Considering the evidence in a light most favorable to Young, sufficient specific facts have been presented to establish that there is a genuine issue for trial. Therefore, Defendants Motion for Summary Judgment as to Count I will be denied.

### C. Hostile Work Environment Claim

To establish a claim of hostile work environment based on race, a plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her race; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was sever and pervasive; and (5) the employer knew or should have known of the racial harassment and failed unreasonably to take prompt and appropriate corrective action. *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir. 1999). A hostile work environment occurs when the workplace is permeated with discriminatory

---

[1] *See e.g. Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001) (Oral and written reprimands issued under a progressive discipline system were not adverse employment actions where the record fails to sufficiently demonstrate some "tangible job consequences.")

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). In *Burlington Northern Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Supreme Court distinguished material adversity from "trivial harms." *Id.* at 68. In doing so, the Supreme Court recognized that Title VII "does not set forth a general civility code for the American workplace" and an employee is not immunized" from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Harassment need not be so extreme that it produces tangible effects on job performance or psychological well-being to be actionable. *Harris*, 510 U.S. at 22. However, there must be proof of some mental distress. *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1082 (6th Cir. 1999) (interpreting *Harris*, 510 U.S. at 22). The Supreme Court has held that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Oncale v. Sundwoner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 22-23).

*Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7 (1st Cir. 2002), recognized that there is no "mathematically precise test" for determining when conduct in the workplace moves from the "merely offensive"and enters the realm of unlawful discrimination. *Id.* at 18. Rather, the question of whether the environment is objectively "hostile or abusive" must be answered by a consideration of the totality of the circumstances including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's

work performance." *Harris*, 510 U.S. at 23. "Subject to some policing at the outer bounds," it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment. *Gorski v. N.H. Dep't of Corrections*, 290 F.3d 466, 474 (1st Cir. 2002), *see also Connor v. Schrader-Bridgeport Intern., Inc.*, 227 F.3d 179 (4th Cir. 2000).

Defendants argue that Count II of Young's Complaint should be dismissed because the cited incidents are only "trivial harms" that do not rise to the level of severe or pervasive conduct sufficient to establish a claim of actionable harassment. However, the facts according to Young appear to be much more extensive and pervasive. Young alleges that following the incident in 2008 when Estep threatened her, she was subjected to some form or type of harassment by her co-workers and supervisors almost every day. When Young complained of the harassment to her supervisors, nothing was done - instead Young alleges that the harassment intensified in scope and nature. Young argues there is nothing trivial about having a supervisor isolate you from your co-workers, deny compensation time, belittling you in front of your peers, permitting your co-workers to belittle you in front of others, having adverse flags filed against you, having your files and records deleted from the system, or being threatened by a co-worker to the point where you need to be transported to the hospital.

Young has presented sufficient material facts to show there is a genuine issue for trial as to whether she was subjected to a hostile work environment. Summary Judgment as to Count II will be denied.

### D. Retaliation in Violation of Title VII

Title VII prohibits discrimination against a current employee, former employee, or

applicant because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, 42 U.S.C. § 2000(e)(3)(a). As with claims of race discrimination "[c]ourts analyzing retaliation claims apply the *McDonnell Douglas* framework of shifting burdens of production and proof." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). Title VII retaliation claims, however, have a different causation standard than Title VII claims of race discrimination. In Title VII retaliation cases, plaintiff must establish that his or her protected activity was the but-for cause of the alleged adverse action by the employer. *Univ. of Texas Sw. Med. Ctr. v. Nasser*, 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation"). A retaliation claim will fail unless the plaintiff shows that "the employer would not have taken the adverse employment action but-for the design to retaliate." *Nasser*, 133 S. Ct. at 2535. To establish a *prima facie* claim of retaliation, a plaintiff must prove: (1) that she engaged in protected activity under Title VII; (2) that her exercise of protected rights was known to the employer; (3) that the employer thereafter took an adverse employment action against the plaintiff, who was subjected to a hostile work environment[2]; and (4) a causal connection exists between the protected activity and the adverse employment action. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). If the plaintiff can establish a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *Id.* at

---

[2] In retaliation cases, the plaintiff must show " that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).


4:12-cv-15187-GAD-MJH Doc # 47 Filed 06/03/14 Pg 14 of 17 Pg ID 464

793. Then, plaintiff, who bears the burden of persuasion, must prove that the protected activity was the but-for causation of the challenged employment action.

Defendants argue that Young cannot establish the final element of a *prima facie* case of retaliation - that there is a causal connection between her protected activity in November 2009 and the unsuccessful performance evaluation that she received on February 11, 2011. The mere fact that an adverse employment action takes place after protected EEO activity has occurred is not, standing alone, sufficient to support a finding of a causal connection between the EEO activity and the adverse employment action. *Booker v. Brown & Williamson Tobacco Co., Ins.*, 879 F.2d 1304, 1314 (6th Cir. 1989). Young alleges her negative performance evaluation was due to her EEO filing in November 2009, however over a full year passed between the date of her complaint and the time of her failing review. Defendants argue the time period is too long to establish an inference of retaliation. *Clark County School District v. Breeden*, 532 U.S. 268 (2001), *see also Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (no causal connection where employment decision occurred four months after plaintiff filed an EEO complaint).

Alternatively, Young maintains that the evidence she has presented establishes the required *prima facie* case. Young argues that while she made her first contact with the EEO office at TACOM on November 4, 2009, it was shortly thereafter that the harassment intensified. Furthermore, when Young asked Zaccagni if he took joy in mistreating her, Zaccagni replied that he could not be happy because of all the complaints being filed against him. Young suggests this statement alone would be sufficient to establish causation between her EEO complaint and the retaliation she endured.

Considering Young's evidence in the most favorable light, Defendants' Motion for Summary Judgment as to Count III will be denied.

### E.     Violation of the Rehabilitation Act of 1973

To establish a *prima facie* case for failure to accommodate a disabled employee, Young must show that: (1) she has a disability; (2) she is qualified for the position; (3) the Army knew or had reason to know of her disability; (4) an accommodation was needed; and (5) the Army did not provide the necessary accommodation. *See DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004); *see also Gaines v. Runyon*, 107 F.3d 1171 (6th Cir. 1997). Reasonable accommodations may include:

> making existing facilities used by employees readily accessible to and usable by individuals with disabilities, job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters and other similar accommodations for individuals with disabilities.

*Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 2002 (6th Cir. 2010) (citing 42 U.S.C § 12111(9)). However, "[a]n accommodation that eliminates an essential function of the job is not reasonable." *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1078 (6th Cir. 1988). "The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment, including the existence of a vacant position for which she is qualified." *McBride v. BIC Consumer Prods., Mfg., Co., Inc.,* 583 F.3d 92, 97 (2d Cir. 2009).

Defendants argue Young has failed to prove a *prima facie* case of disability discrimination because she has failed to prove that she qualifies as "disabled" under the meaning of the Rehabilitation Act. Under the Act, a disability is defined as: (1) a physical

15

or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *See* 29 C.F.R. § 11630.2(g). To be substantially limited, an employee must be either unable "to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(l)(ii). Major life activities include, but are not limited to "learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Young maintains that she suffers from a disability as defined by the Act. In support, Young provided DeYoung with two letters from her doctor establishing that she suffers from gastrophageal reflux, migraine cephalgia, and pre-existing hypertension. Young's doctor confirmed that the symptoms Young experienced are situational/adjustment related and therefore recommended Young be off work until she could be reassigned to an environment that does not adversely affect her medical conditions. In November 2009, an altercation at work had such an severe impact on Young's health that she had to be taken to the hospital. However, although Young alleges that her physical conditions limit her working abilities, she provides no facts or explanation to support such a correlation.

Additionally, with a motion for summary judgment under F<small>ED</small>. R. C<small>IV</small>. P. 56, once the party seeking summary judgment has specified the basis upon which it contends judgment should be granted, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). Young's Response fails to do so, but instead only states that she "objects" to Defendants' Motion for Summary Judgment as to Count IV. Therefore, Defendants' Motion will be granted as to Count IV.

IV. **CONCLUSION**

Based on the facts above, the Court will **GRANT IN PART AND DENY IN PART** Defendants' Motion for Summary Judgment [#43].

SO ORDERED.

Dated: <u>June 3, 2014</u>                                        <u>/s/Gershwin A Drain    </u>
                                                                          GERSHWIN A. DRAIN
                                                                          United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
<u>June 3, 2014</u>, by electronic and/or ordinary mail.

<u>/s/ Tanya Bankston   </u>
Deputy Clerk